UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| OMAR NAGY,<br><br>Plaintiff(s),<br><br>v.<br><br>WESTERN ALLIANCE BANK, dba<br>"BANK OF NEVADA,"<br><br>Defendant(s). | Case No. 2:16-CV-2095 JCM (GWF)<br><br>ORDER |

Presently before the court is defendant Western Alliance Bank d/b/a Bank of Nevada's ("Bank of Nevada") motion for summary judgment. (ECF No. 32). Plaintiff Omar Nagy filed a response (ECF No. 44), to which defendant replied (ECF No. 47).

**I.     Facts**

In April of 2009, defendant hired plaintiff as a relationship manager in special assets. (ECF No. 32, Ex. A-3). After two and a half years in the position, plaintiff was moved to a position in commercial real estate production. *Id.*

In February of 2016, plaintiff began suffering from anxiety caused by workplace stress. (ECF No. 44, Ex. 1). Plaintiff's symptoms included dizziness, headaches, a feeling of helplessness, sleep disturbances, and an inability to concentrate at work. *Id.*

On May 20, 2016, plaintiff had an initial visit with Dr. Javaid Anwar ("Dr. Anwar"), a primary care physician. (ECF No. 32, Ex. A-2). Dr. Anwar's notes from the visit included a diagnosis and treatment plan for general anxiety disorder. *Id.* The plan included a prescription for two anti-anxiety medications. *Id.* The plan did not mention work restrictions or limitations. *Id.*

James C. Mahan
U.S. District Judge

1  Plaintiff was told to schedule a follow-up visit in four weeks for further evaluation and treatment.

2  *Id.*

3      On June 1, 2016, plaintiff visited Dr. Anwar. (ECF No. 44, Ex. 9). The stated reason for

4  the visit was "patient needs an FMLA form filled out because of stress with anxiety disorder." *Id.*

5  Dr. Anwar's notes from the visit recommended continuing the May 20, 2016, treatment plan. (ECF

6  No. 32, A-13). The notes did not mention work restrictions or worsening symptoms. *Id.*

7      After plaintiff's June 1, 2016, visit, Dr. Anwar and his staff completed plaintiff's FMLA

8  certification form. (ECF No. 32, Ex. A-2). The form stated that plaintiff would require intermittent

9  leave. (ECF No. 44, Ex. 10). Dr. Anwar signed the certification and sent it to defendant on June

10 9, 2016. (ECF No. 44, Ex. 8). Upon receiving the completed form, defendant sent an email to

11 plaintiff acknowledging the request. (ECF No. 32, Ex. A-17).

12     On June 14, 2016, Dr. Anwar prepared a revised FMLA certification form. (ECF No. 44,

13 Ex. 11). The only substantive change to the form was that Dr. Anwar indicated that plaintiff

14 needed block leave instead of intermittent leave. *Id.* The revised form stated that plaintiff needed

15 block leave from June 9, 2016, through August 15, 2016. *Id.*

16     Defendant received plaintiff's revised FMLA certification form on June 14, 2016. (ECF

17 No. 32, Ex. A-1). On June 17, 2016, defendant sent plaintiff a letter approving the leave along

18 with FMLA documents for plaintiff to complete. (ECF No. 32, Ex. A-19).

19     On June 21, 2016, plaintiff emailed the completed FMLA documents to his attorney. (ECF

20 No. 32, Ex. A-3). Plaintiff's attorney forwarded the paperwork to defendant. (ECF No. 32, Ex.

21 B-2). The forwarded email included correspondence from plaintiff to his attorney stating that "I

22 want to give you the electronic and actual key to the bank. I am heading out of the country for a

23 month starting the 9th. I hope we can have this wrapped up by then, but in the event it is not – I

24 want you to have the items because they would want them." *Id.* This correspondence raised a

25 concern over the legitimacy of plaintiff's approved FMLA leave and his intention of returning to

26 work. (ECF No. 32, Ex. A-1).

27     On July 1, 2016, defendant sent plaintiff a message requesting a meeting. (ECF No. 32,

28 Ex. A-20). On July 5, 2016, after receiving no reply from plaintiff, defendant sent a follow-up

**James C. Mahan**
**U.S. District Judge**

1    email.  *Id.*  Plaintiff's attorney emailed defendant on July 6, 2016, stating that plaintiff was

2    unavailable to meet that week.  *Id.*  Plaintiff was unavailable because he was visiting family in

3    Pakistan and traveling from July 9, 2016, through August 3, 2016.  (ECF No. 47, Ex. C-3).

4         On July 7, 2016, defendant terminated plaintiff's employment with the company.  (ECF

5    No. 32, Ex. A-21).  Defendant sent plaintiff a letter providing two reasons for his termination.  *Id.*

6    First, the letter referenced plaintiff's failure to disclose a prior outside business interest, in

7    contravention of defendant's code of conduct.  *Id.*  Second, defendant cited plaintiff's refusal to

8    cooperate with its investigation into his suspected FMLA fraud.  *Id.*

9    **II.    Legal Standard**

10        The Federal Rules of Civil Procedure authorize summary judgment when the pleadings,

11   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

12   show that "there is no genuine dispute as to any material fact and the movant is entitled to a

13   judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is

14   "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

15   323–24 (1986).

16        For purposes of summary judgment, disputed factual issues should be construed in favor

17   of the non-moving party.  *Lujan v. Nat'l Wildlife Fed*., 497 U.S. 871, 888 (1990).  However, to

18   preclude summary judgment, the nonmoving party must "set forth specific facts showing that there

19   is a genuine issue for trial."  *Id.*

20        In determining summary judgment, a court applies a burden-shifting analysis.  The moving

21   party must first satisfy its initial burden.  "When the party moving for summary judgment would

22   bear the burden of proof at trial, it must come forward with evidence which would entitle it to a

23   directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has

24   the initial burden of establishing the absence of a genuine issue of fact on each issue material to

25   its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc*., 213 F.3d 474, 480 (9th Cir. 2000)

26   (citations omitted).

27        By contrast, when the nonmoving party bears the burden of proving the claim or defense,

28   the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

**James C. Mahan**
**U.S. District Judge**

element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

Plaintiff asserts two claims for relief under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et. seq. (ECF No. 1). Plaintiff claims that defendant (1) interfered with his use of FMLA leave and (2) subsequently retaliated against him for using FMLA leave. *Id.* Defendant

moves for summary judgment on both claims. (ECF No. 32). The court will analyze the claims separately.

### a. FMLA interference

Under the FMLA, it is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise any right provided under the FMLA." 29 U.S.C. § 2615(a)(1). To state a prima facie case of FMLA interference, an employee must establish that "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (quoting *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)).

Here, the parties dispute whether plaintiff was entitled to leave under the FMLA. Therefore, the court will analyze whether the parties raise a genuine dispute as to any material fact.

### 1. Entitlement

The FMLA provides that "an eligible employee shall be entitled to 12 workweeks of leave during any 12-month period because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Therefore, for plaintiff to establish he was entitled to FMLA leave under this subsection, he must show that (1) he suffered from a serious health condition (2) which made him unable to perform the functions of his position. *See id.*

A serious health condition is "an illness, injury, impairment, or physical or mental condition that involves: (A) inpatient care in a hospital or (B) continuing treatment by a health care provider."[1] 29 U.S.C. § 2611(11). Continuing treatment by a health care provider, as relevant to this matter, includes: (A) a period of incapacity and treatment, or (B) incapacity or treatment due to a chronic serious health condition. *See* 29 C.F.R. § 825.115(a) and (c).

---

[1] The parties mention "medical necessity" as a requisite element for an illness to qualify as a serious health condition. Medical necessity is required for intermittent FMLA leave and is distinct from the serious health condition requirement. *Compare* 29 U.S.C. § 2612(b)(1), *and* 29 C.F.R. § 825.202(b), *with* 29 U.S.C. § 2612(a)(1)(D), *and* 29 U.S.C. § 2611(11).

Continuing treatment based on a period of incapacity and treatment, as defined by the Department of Labor, requires:

> A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves: (1) treatment two or more times, within 30 days of the first incapacity, unless extenuating circumstances exist, by a health care provider or (2) treatment by a health care provider on at least one occasion, which results in a continuing treatment under the supervision of the health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity. The term extenuating circumstances means circumstances beyond the employee's control that prevent the follow-up visit from occurring as planned by the health care provider.

29 C.F.R. § 825.115(a). Therefore, the threshold inquiry under § 825.115(a) is whether plaintiff suffered a period of incapacity of more than three consecutive, full calendar days. *See id.*; *see also Marchisheck v. San Mateo Cty.*, 199 F.3d 1068, 1074 (9th Cir. 1999).

Moreover, continuing treatment includes "any period of incapacity or treatment for such incapacity due to a chronic serious health condition." 29 C.F.R. § 825.115(c). A chronic serious health condition is one which: (1) requires periodic visits for treatment by a health care provider; (2) continues over an extended period of time; and (3) may cause episodic rather than a continuing period of incapacity. *Id.*

Incapacity within the FMLA means "inability to work, attend school, or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113(b). FMLA plaintiffs are required to show incapacity. *See* 29 C.F.R. § 825.115(a) and (c).

Here, plaintiff contends that his general anxiety disorder qualifies as a serious health condition either based on a period of incapacity and treatment or due to a chronic serious health condition. (ECF No. 44). Because plaintiff has failed to raise a triable issue on either allegation, the court will grant defendant's motion for summary judgment on plaintiff's FMLA interference claim.

Plaintiff argues that his deposition testimony, in which he stated that his anxiety started "interfering with his work" and made him less "proactive on things that I needed to do," creates a

1  dispute as to whether he was incapacitated for more than three consecutive calendar days.[2] *See*

2  (ECF No. 44, Ex. 1). Yet, plaintiff also stated in his deposition that he could work and reach his

3  goals despite his anxiety. (ECF No. 32, Ex. A-3). Further, Dr. Anwar's notes and treatment plan

4  from plaintiff's May 20, 2016, and June 1, 2016, visits do not mention work limitations or

5  restrictions. *See* (ECF No. 32, Exs. A-12, A-13). Relatedly, on plaintiff's amended FMLA form,

6  Dr. Anwar marked "no" to the question, "is the employee unable to perform his/her job functions

7  due to the condition?" (ECF No. 44, Ex. 11).

8      Therefore, plaintiff has failed to produce sufficient evidence indicating an "inability to

9  work" for a period of more than three consecutive, full calendar days. *See* 29 C.F.R. § 825.113(b);

10  29 C.F.R. § 825.115(a); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th

11  Cir. 2002) (holding that no genuine issue exists when the only evidence presented is

12  uncorroborated and self-serving testimony). Accordingly, plaintiff was not entitled to FMLA

13  leave based on a period of incapacity and treatment. *See* 29 C.F.R. § 825.115(a).

14      Plaintiff additionally contends that he qualified for FMLA leave due to a chronic serious

15  health condition. (ECF No. 44). Plaintiff's amended FMLA form indicates that he will require

16  treatment visits at least twice per year, that his condition is likely to be lifelong, and that his

17  condition will cause episodic flare-ups. (ECF No. 44, Ex. 11). Therefore, plaintiff argues that he

18  has presented sufficient evidence indicating that his general anxiety disorder is a chronic serious

19  health condition. *See* 29 C.F.R. § 825.115(c).

20      Here, plaintiff has failed to set forth evidence of continuing treatment due to a chronic

21  serious health condition, as he has failed to present evidence showing that his anxiety resulted in

22  a period of incapacity. *See* (ECF No. 44); *see also* 29 C.F.R. § 825.115(c). Plaintiff stated in his

23  deposition that he could still do his job and reach his goals despite his anxiety. (ECF No. 32, Ex.

24  A-3). Additionally, Dr. Anwar indicated that plaintiff was able to perform all work functions on

25  plaintiff's amended FMLA form. (ECF No. 32, Ex. A-16).

26

27      [2] Plaintiff has not specifically alleged when the relevant three consecutive, full calendar
days of incapacity occurred in his complaint or response. *See* (ECF Nos. 1, 44); *see also* 29 C.F.R.
28  § 825.115(a). Furthermore, plaintiff has failed to provide sufficient evidence suggesting a period
of incapacity on any of the relevant dates.

**James C. Mahan**
**U.S. District Judge**

- 7 -

1    Further, plaintiff's activities during his FMLA leave suggest that he was not incapacitated.

2    *See* (ECF No. 32, Ex. A-3). Plaintiff traveled from Las Vegas, Nevada, to Lahore, Pakistan, to

3    visit family.[3] *See* (ECF No. 47, Ex. C-3). He also completed his transfer from William Mitchell

4    Law School to UNLV Boyd School of Law on June 28, 2016. Accordingly, plaintiff was not

5    entitled to FMLA leave due to a chronic serious health condition. *See* 29 C.F.R. § 825.115(c); *see*

6    *also Marchisheck*, 199 F.3d at 1074.

7         **b. FMLA retaliation**

8    Under the FMLA, it is unlawful "for any employer to discharge or in any other manner

9    discriminate against any individual for opposing any practice made unlawful under the FMLA."

10   29 U.S.C. § 2615(a)(2); *see Loncar v. Penn Nat'l Gaming*, No. 2-13-cv-02218-JAD-GWF, 2015

11   WL 5567277, at \*3 (D. Nev. Sept. 22, 2015).

12        29 U.S.C. § 2615(a)(2) does not cover visiting negative consequences on an employee

13   simply because he used FMLA leave. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124

14   (9th Cir. 2001). Such action is covered under 29 U.S.C. § 2615(a)(1). *See id.* Therefore, when a

15   plaintiff alleges retaliation for using FMLA leave, courts construe the claim as one for interference

16   under § 2615(a)(1). *See, e.g.*, *Loncar*, 2015 WL 5567277, at \*4.

17        Here, plaintiff's retaliation claim is based on the allegation that he was terminated because

18   he took FMLA leave. (ECF No. 1). Defendat argues that plaintiff's retaliation claim should be

19   treated as an interference claim. (ECF No. 32 at 24).

20        In his response, plaintiff argues that he opposed defendant's interference with his FMLA

21   rights and suffered an adverse employment action as a result. (ECF No. 44 at 21). He asserts that

22   "defendant did not comply with his request that all FMLA related communication from defendant

23   be sent to plaintiff's attorney." *Id.* However, plaintiff provides no legal authority suggesting that

24   the FMLA provides the right to have all communications flow through an attorney. *See id.*

25

26   ———————————

27        [3] Plaintiff stayed with his family in Pakistan from July 10, 2016 to July 23, 2016. (ECF
     No. 32, Ex. A-3). Plaintiff's return trip to Las Vegas, Nevada, included multiday stops in Paris,
28   France, and Barcelona, Spain. *See* (ECF No. 47, Ex. C-3). Plaintiff returned to Las Vegas on
     August 3, 2016. *See id.*

1    Therefore, the court will treat plaintiff's retaliation claim as a § 2615(a)(1) interference

2  claim. *See Loncar*, 2015 WL 5567277, at \*4. Accordingly, because the court concludes that

3  plaintiff was not entitled to leave under the FMLA, defendant is entitled to summary judgment on

4  plaintiff's retaliation claim. *See id.*; *see also Bachelder*, 259 F.3d at 1124.

5  **IV.    Conclusion**

6        Accordingly,

7        IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for

8  summary judgment (ECF No. 32) be, and the same hereby is, GRANTED.

9        The clerk shall enter judgment accordingly and close the case.

10        DATED June 22, 2018.

11                                    _Jeuw C. Mahan_

12                                    UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**